THERON H. KNIGHT and JOANNE L. KNIGHT, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Knight v. Commissioner
Docket No. 13554-87.
United States Tax Court
T.C. Memo 1988-186; 1988 Tax Ct. Memo LEXIS 215; 55 T.C.M. (CCH) 733; T.C.M. (RIA) 88186; May 2, 1988. H. Christopher Keown, for the petitioners. John W. Sheffield, III, for the respondent. WILLIAMS
MEMORANDUM FINDINGS OF FACT AND OPINION WILLIAMS, Judge: The Commissioner determined deficiencies in petitioners' Federal income tax as follows: Year
Deficiency
1982
$  2653.00
1983
1441.00
1984
629.00
After concessions we must decide whether petitioners may deduct, pursuant to section 162(a)(2), [1] certain of Theron Knight's traveling expenses incurred *216 in 1982 and 1983. FINDINGS OF FACT Petitioners were husband and wife during the years in issue and resided in Woodstock, Georgia, near Atlanta on the date their petition was filed. Petitioner Theron H. Knight (hereinafter "petitioner"), a member of the Sheet Metal Workers International, Local 85, was a sheet metal worker by trade. Petitioner had been a member of the union for 10 years and a sheet metal worker for 21 years. In 1981 there was no suitable employment for petitioner in the Atlanta area, and on May 4, 1981, petitioner accepted a job with Transco, Inc. ("Transco") in Juliette, Georgia, 115 miles from petitioner's residence. Transco was constructing a coal fired generating station for the Georgia Power Company known as Plant Scherer. The construction plans for Plant Scherer called for building four separate units. Separate construction contracts were awarded for each unit. Transco, had been awarded the construction contracts for units one and two which were scheduled for completion in 1981 and 1983 respectively. Transco *217 was not awarded the contracts for construction of units three and four. As a result, on July 1, 1983, Transco terminated petitioner's employment. Petitioner had had no other specific information about the duration of his employment in Juliette. Petitioner's prior union jobs had a duration of 3 days to 6 months. Petitioner worked at Plant Scherer for 26 months. This employment lasted longer than any union job petitioner previously had held. After this termination petitioner remained unemployed for 6 months until he secured a union job in Rome, Georgia. During the period of petitioner's employment in Juliette, petitioner maintained a residence in Woodstock, Georgia. For six weeks he commuted 115 miles to work each day; this began to wear on petitioner and his car. After six weeks instead of commuting he stayed at the Davis Brothers' Motel in Juliette during the week and returned to Woodstock for weekends. Petitioner repeatedly asked his union for work in the Atlanta, Georgia area, but there was no suitable employment for petitioner in that area in 1981. Petitioner continued his work at Plant Scherer in Juliette until he was terminated in 1983. Petitioner had long-standing *218 ties to the Woodstock community. Petitioner's wife Joanne Knight and children resided at petitioner's home in Woodstock. They had lived at their residence in Woodstock for 18 years and were actively involved in church and other charitable organizations in the community. They voted in Cherokee County where Woodstock is located and sent their children to Cherokee County public schools. Their children also participated in scouting and sports in the area. Mrs. Knight worked for Southern Bell during the years in issue and had been employed by Southern Bell for 11 years. For the taxable years 1982 and 1983 petitioners deducted on their Federal income tax returns petitioner Theron Knight's living expenses incurred in Juliette and the cost of his round-trip mileage from Juliette to Woodstock. Respondent disallowed these deductions on the grounds that the amounts were not incurred while traveling away from home. At trial petitioners conceded the nondeductibility of their mileage expenses. OPINION We must decide whether Mr. Knight is entitled to deduct living expenses he incurred while working in Juliette, Georgia during 1982 and 1983. Ordinarily, deductions for personal living *219 expenses are not allowable. Section 262. Section 162(a)(2), however, allows a deduction for traveling expenses incurred while away from home in pursuit of a trade or business. Generally a taxpayer's home for purposes of section 162(a)(2) is the location of the taxpayer's principal place of business or employment. , affg. ; ; . An exception to this rule exists for temporary employment away from home. . A taxpayer may deduct traveling expenses necessitated by maintaining a residence distant from his employment if that employment is temporary and not indefinite. , affg. . The purpose of allowing the deduction of living expenses while a taxpayer is "away from home" is "to mitigate the burden of the taxpayer who, because of the exigencies of his trade or business, must maintain *220 two places of abode and thereby incur additional and duplicate living expenses." . Accordingly, a taxpayer may deduct his living expenses incurred at a temporary job away from home because it would be unreasonable to expect him to move his residence under such circumstances. . In order to deduct these expenses, however, the traveling away from home must be required by the exigencies of employment rather than by "personal conveniences and necessities." . The question of whether petitioner's employment was temporary or indefinite is one of fact upon which petitioners have the burden of proof. . The Eleventh Circuit to which this case is appealable in , approvingly cited this Court's application of several "subjective criteria" in deciding whether a taxpayer's employment is temporary or indefinite. These considerations are: whether the taxpayer had a logical expectation that the employment would *221 last for a short period, an assurance that the job itself would not extend beyond a reasonably brief duration, an inordinate duplication of living expenses, and enough financial, familial and social bonds to choose prudently to remain at his original residence, rather than uproot his family from their accustomed home and relocate them at the site of his present work.
, quoting . Based on the evidence before us we find that petitioner's employment in Juliette was temporary and that the Atlanta area was his "tax home" in 1982 and 1983. Petitioner had no reason to believe that the construction project in Juliette would be other than temporary. The fact that Transco had no contract for the third and fourth units of the Plant Scherer site in 1981 contributed to the foreseeably short duration of petitioner's employment in Juliette. The company's contract work was expected to be completed at Plant Scherer in 1983 unless it were awarded contracts for the third and fourth units. Transco did not receive those contracts, and in fact its work at Plant Scherer was completed in 1983. In addition, petitioner's *222 union jobs usually ranged from 3 days to 6 months, and though petitioner could anticipate that power plant construction would offer longer employment, it had a foreseeable end that was near enough to be characterized as providing temporary employment. Petitioner's experience indicated that union job reductions in work force could leave petitioner unemployed without notice. The evidence also shows petitioner's determination to leave his employment in Juliette at the first opportunity to obtain a job in the Atlanta area. Petitioner continually asked his union to be placed back in the Atlanta area. The evidence also shows that petitioner's living accommodation reflected his sense of the temporariness of his employment at Plant Scherer; he lived in a motel during his weekly stays in Juliette. He did not purchase a trailer or other type dwelling that would indicate that he expected the job to be more than temporary. Compare . Moreover, petitioner retained substantial contracts in the Woodstock area while he was employed in Juliette. He and his wife owned their home in Woodstock and had lived there for 18 years. Mrs. *223 Knight had been steadily employed there by Southern Bell for 11 years. Their children attended school in the area and were involved in scouting and sports. Petitioner's family was involved in several charitable organizations and had a church affiliation in Woodstock. In other words, petitioner's familial, financial, and social bonds were in Woodstock, Georgia. Although no one of the above mentioned facts we have considered is determinative of the ultimate factual issue of temporariness, we believe that the facts taken in concert point to a conclusion that petitioner's employment in Juliette was temporary. Cf. and compare . Petitioner could not reasonably have been expected to move his family and residence from substantial contacts in Woodstock to a remote work site in Juliette for employment which petitioner expected would last for a definite and short period of time. We hold, therefore, that petitioner's living expenses were incurred while away from home in pursuit of a trade or business. These expenses are deductible pursuant to section 162(a)(2). Because of concessions, Decision will be entered under *224 Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect for the years in issue, unless otherwise indicated. ↩